HOWARD A. MARKS, Plaintiff, *v.* JORDAN S. NAGER et al., Defendants.

Supreme Court, Special Term, Kings County, September 15, 1954.

*Frederick Mellor* for Jordan S. Nager, defendant.

*Isadore Halpern* and *Alfred A. Rosenberg* for plaintiff.

OLLIFFE, J. The defendant Nager has moved this court to set aside and vacate a notice of examination before trial in this action to recover damages for personal injuries sustained by

plaintiff Marks while riding as a passenger in the defendant Nager's car. The motion is made on the ground that since the plaintiff Marks and the defendant Nager are first cousins an examination before trial will be most inequitable and unjust because of the close relationship. The defense in this action is being carried on by counsel furnished by the defendant Nager's insurance carrier. The affidavit in support of the motion to vacate the examination is made by the attorney for defendant Nager and alleges: " the law of this state is well settled on this question that in an action between relatives for personal injuries when it can be assumed that the defendant may cooperate to the detriment of the insurance carrier, such notice to examine before trial will be vacated on motion."

Discovery by the examination of a party was an ancient remedy in equity. " Discovery " was practiced in English Chancery and had been carried over from continental practice. In 1848, provisions for discovery were enacted and can be found in the New York Code of Procedure for that year (L. 1848, chs. 379, 380). In 1849, and every few years thereafter the law providing for discovery and inspection has been amended. The Eighth Annual Report of the New York Judicial Council (1942), at page 364, reads as follows: " The principal objection to extending the scope of examination before trial, especially in regard to negligence cases, is claimed to be public policy; that is, the fear of inviting perjury. Dishonest adversaries and attorneys would present false testimony under any circumstances but it is not believed that many litigants would deliberately perjure themselves nor would many attorneys suborn perjury simply because of more liberal examination. It has been found, moreover, that full and mutual discovery discourages rather than encourages false and perjured testimony." And at page 365: " Actual experience in every jurisdiction shows that liberal examination tends to discourage perjury ".

The court feels that it can be stated without fear of contradiction that the trend has been toward broadening the permissive scope of examinations. Examinations before trial are a useful procedure in obtaining facts.

Numerous authorities can be cited holding that the provisions providing for " discovery and inspection " should receive liberal construction (*Kertz* v. *Liberty Bank of Buffalo,* 226 App. Div. 715; *Hillick* v. *Edwards & Son,* 143 Misc. 277).

Disqualification of parties and interested persons as witnesses is a question that has plagued courts throughout the ages. Treatises were written on the subject in 1400. A very interest-

ing statement is found in the English Common Law Practice Commissioners, Second Report (1853), at page 10: " Plain sense and reason would obviously suggest that any living witness who could throw light upon a fact in issue should be heard to state what he knows, subject always to such observations as may arise as to his means of knowledge or his disposition to the truth. The law of England, however, at least until a recent period, proceeded on a very different principle. Acting apparently on a distrust both of the integrity of witnesses and of the discernment of the tribunals, it sought to protect the latter from the possibility of being misled, by carefully excluding from giving testimony not only the parties to the cause, but any one who had any, even the most minute, interest in the result. Every person so circumstanced, however small and insignificant the amount of his interest, was presumed to be incapable of resisting the temptation to perjury; and every judge and juryman was presumed to be incapable of discerning perjury under circumstances peculiarly calculated to excite suspicion and watchfulness. It is painful to contemplate the amount of injustice which must have taken place under the exclusive system of the English law, not only in cases actually brought into court and there wrongly decided in consequence of the exclusion of evidence, but in numberless cases in which the parties silently submitted to wrongs from inability to avail themselves of proof which, though morally conclusive, was in law inadmissible."

Disqualification because of relationship does not appear to have received any consideration until the early 1600's. Disqualification because of filial or paternal relationship failed to receive any cognizance in our law. Father and son as well as other family relations were allowed to testify for each other. Although in ancient days, objection was made to the competency of the witnesses where there was a relationship, even under the most drastic law that comes to the court's attention cousins were allowed to testify. See Wigmore on Evidence (3d ed., Vol. 2, p. 731, note 3): " ENGLAND: 1630, Moor's Case, Hetley 137 (' Hutton said, there can be no exception [= objection] to the witness who is cozen to the party, to hinder his evidence in our law; to which all agreed ') ".

Counsel · for the defendant has cited a series of cases (*De George* v. *Pucci,* N. Y. L. J., Dec. 8, 1948, p. 1451, col. 6; *Horowitz* v. *Goodman,* N. Y. L. J., May 21, 1941, p. 2284, col. 1; *Rudensky* v. *Mannings,* N. Y. L. J., May 9, 1938, p. 2250, col. 5; *Sirota* v. *Gluckman,* N. Y. L. J., June 8, 1937, p. 2887, col. 2; *Minsky* v. *Leibowitz,* 200 Misc. 900, and *Chorost* v. *Cohen,* N. Y.

L. J., Sept. 23, 1952, p. 572, col. 2) relating to actions brought by a son against his father, mother-in-law against son-in-law, daughter-in-law against father-in-law, and administrator of father against the daughter of the father and son-in-law. There are also numerous other cases in which similar relationships existed, in which the court vacated notices of examination before trial. The court is unable to find a single instance where an appellate court has ruled upon the question.

*Gottschalk* v. *Reinhardt* (260 App. Div. 811), which is cited as an authority in the afore-cited cases in support of the rule that relationship bars an examination, is not decisive. The record on appeal in the *Gottschalk* case sets forth the opinion of the lower court as follows: "Motion for examination before trial of individual defendant by his employee is denied. In the absence of a showing of special circumstances no authority exists for the granting of such application." The order of the lower court was affirmed, without opinion. Neither the lower nor the appellate court made any statement concerning the relationship of the parties.

The reasoning that prevails throughout the decisions in the afore-cited cases is: "The defendant is covered by casualty insurance." (*Rudensky* v. *Mannings, supra.*) "Needless to say, if the plaintiffs succeed in their action, someone other than this defendant will be ultimately required to pay the judgment." (*Horowitz* v. *Goodman, supra.*) "While this is apparently a controversy between plaintiffs and defendants, no one will be so naive as not to understand that it is a controversy between the daughter, her husband and her father on the one side and a casualty insurance company on the other side." (*Sirota* v. *Gluckman, supra.*)

The court feels that the authorities cited are not in point as the relationships in the cases cited were much closer blood relationships than that existing between cousins. "First cousins of either the half or whole blood may marry. Op. Atty. Gen., 1934, 48 St. Dept. 109." (See McKinney's Consolidated Laws, Domestic Relations Law, § 5, note, p. 5.)

It is apparent that there must be some line of demarcation drawn with respect to situations of this nature. One cannot say, without proof to the contrary, that cousins bear the same close relationship as that of father and son, etc. Though it may be true that the parties may have discussed the facts of the accident, although the defendant has not submitted such evidence, such a discussion in and of itself is not a tenable objection against the right of the examination if it is material and neces-

sary. The presumption of fraud and collusion cannot be spelled out merely because of such relationship.

There are two recent cases where the examination has been permitted although the parties to the action were closely related. In *Seitz* v. *Selig* (N. Y. L. J., July 1, 1954, p. 6, col. 5), the decedent was the wife of the plaintiff and the mother of the defendant. In *Gudz* v. *Good* (201 Misc. 727) the plaintiff father moved to examine the defendant son. The defendants in both instances were insured.

Mr. Justice ELSWORTH, of the Supreme Court, Special Term, Albany County, in *Gudz* v. *Good* (*supra*), at page 728, wrote as follows: " The fact that the parties are father and son does not outlaw this litigation between them. If our law sanctions the suit, then no sound reason presents itself why the parties should not be afforded all the procedural remedies available generally to the suit. Even if the parties have discussed the facts of the action — which plaintiff denies — such a discussion is no tenable objection against the right of the examination sought. Discussion brought about by the close relationship of the parties is not tantamount to a presumption of fraud and collusion simply because of such relationship. One who perpetrates fraud and collusion, or participates therein, should of course forfeit any right to an examination, but conclusive presumption that fraud and collusion are present cannot properly be drawn merely from the existence of the close relationship of these parties."

The mere fact that the parties are related to each other is in and of itself insufficient in the court's opinion to justify a denial of an examination before trial. Defendant's attorney at the trial will have ample opportunity to place upon the record the relationship of the parties to this action. It is for the triers of the facts to weigh the testimony in the light of the relationship.

The court is of the opinion that there should be no special rule of law simply because a defendant is insured. The fact that the defendant is insured should not deprive the plaintiff of the right to use a very valuable legal procedure. The insurance company is not without redress in the event the insured defendant fails to co-operate with it. The court knows of no instance where an insurance policy fails to carry a provision that absolves the insurance carrier of liability if the policyholder fails to co-operate with the insurance carrier.

It has been written in decisions cited by the defendant that one would be naive to assume that the parties would not get together and commit perjury in order to collect from the insur-

ance company.  This court refuses to imply dishonesty merely because of relationship.  This court assumes good faith and a right-minded attitude on the part of the plaintiff in the absence of proof to the contrary.

Motion to vacate notice of examination before trial is denied. Settle order on notice, setting forth time and place of examination.